DAVIS & ASSOCIATES, Appellant,

v.

Anthony WILLIAMS, et al., Appellee.

No. 03–CV–284.

District of Columbia Court of Appeals.

Argued June 8, 2004.

Decided Feb. 23, 2006.

Michael S. Rosier, for appellant.

Michael F. Wasserman, Assistant Corporation Counsel, with whom Robert J. Spagnoletti, Corporation Counsel, and Edward E. Schwab, Acting Deputy Corporation, were on the brief, for appellees.*

Before SCHWELB, Associate Judge, WAGNER and STEADMAN, Senior Judges.**

WAGNER, Senior Judge:

Appellant, Davis & Associates (Davis), appeals from an order of the trial court dismissing for lack of subject matter jurisdiction and failure to exhaust administrative remedies Davis' complaint for breach of contract and declaratory judgment against appellees, District of Columbia, Mayor Anthony Williams, Chief Financial Officer Natwar M. Ghandi, and the D.C. Public Benefit Corporation (PBC)[1] (collectively referred to as the District). Davis argues that the trial court erred in its ruling because: (1) the subject contract is exempt from review by the Contract Appeals Board (CAB); and (2) the CAB lacks authority to grant declaratory relief. We conclude that Davis' contract is not exempt from review by the CAB and that the CAB's jurisdiction is not affected by Davis' request for declaratory relief. Therefore, we affirm the trial court's decision dismissing Davis' complaint for failure to exhaust administrative remedies.

## I. Factual and Procedural Background

Davis filed a complaint in the Superior Court against the District for declaratory judgment and breach of contract. Davis alleged that under the terms of its contract, it was responsible for analyzing and preparing the Cost Reports for PBC "in order to recover payments due to 'D.C. General Hospital' from Medicaid/Medicare." The contract, a copy of which was attached to the complaint,[2] provided that

---

* On May 26, 2004, the Office of the Corporation Counsel of the District of Columbia was renamed the Office of the Attorney General of the District of Columbia. *See* Mayor's Order 2004–92, 51 D.C.Reg. 6052 (2004).

** Judge Wagner was Chief Judge of the court at the time of argument. Her status changed to Senior Judge on December 21, 2005. Judge Steadman was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on August 6, 2004.

1. The PBC was abolished on April 30, 2001 by the District of Columbia Financial Responsibility and Management Assistance Authority (DCFRMAA), and PBC's functions were transferred to the Department of Health. Health Care Privatization Emergency Amendment Act of 2001, DCFRMAA–1, eff. April 30, 2001,

48 D.C.Reg. 4024–32 (2001); Health Care Privatization Amendment Act of 2001, DCFRMAA–3, D.C. Law 14–18, eff. July 12, 2001, 48 D.C.Reg. 4047–4056 (2001). The District acknowledges that it assumed liabilities of the PBC, 48 D.C.Reg. 4052 § 5, and that the Act created a Health Care Safety Net Administration within the D.C. Department of Health which is responsible for, among other things, terminating and winding down PBC's existing contracts and arranging for payment of PBC's lawful obligations that have been assumed by the District of Columbia pursuant to § 5 of the Act. *Id.* at 4050 §§ 3(b)(1), (4), (5).

2. Davis requested that the contract be incorporated into its complaint by reference. *See* Super. Ct. Civ. R. 10(c) (2004) (providing, in

Davis would complete certain Medicare and Medicaid Cost reports on behalf of PBC to comply with timely filing requirements. In that connection, the contract provided that Davis would perform the following services, among others: (1) "[r]eview all data and provide documentation to file cost reports related to Medicare and Medicaid;" (2) "[d]evelop strategies to maximize reimbursement on Cost Reports;" and (3) "furnish the PBC with all copies of worksheets and relevant regulations to justify the reimbursable costs." PBC used the cost reports to recover payments from Medicaid/Medicare. The contract is described as a "Contingency Contract," under the terms of which Davis' compensation is to be paid at the rate of ten percent of the revenues "realized and collected" above a certain baseline figure. The contract provides for Davis to submit to PBC invoices for payment, along with a certification "that the amounts billed are accurate and proper." The contract indicates that PBC has a "monetary obligation" to pay under the contract, but that no services were to be performed after September 30, 2000 unless there were appropriated funds to ensure payment.

Davis alleged that, in the performance of the contract, it identified for collection money due D.C. General Hospital (Hospital) from uncollected Medicare and Medicaid payments in an amount in excess of $200,000,000. Davis requested that the court enter a declaratory judgment to the effect that the money payable to the Hospital is "dedicated revenue" as defined in

D.C.Code § 32–262.1(4) (1999) and that as such, it must be deposited into the Hospital's "fund" established pursuant to D.C.Code § 32–262.6(c)(1999). Davis also claimed damages based on the theory that the District breached the contract by failing to deposit the funds in the manner required by law, thereby preventing Davis from collecting the contingent fees due under the contract.

The District filed a motion to dismiss pursuant to Super. Ct. Civ. R. 12(b)(1), arguing that the Superior Court did not have subject matter jurisdiction over the controversy. Specifically, it contended that the CAB has primary jurisdiction under the District of Columbia Procurement Practices Act of 1985 (DCPPA) and that the CAB has full statutory jurisdiction over Davis' claim. In opposition to the motion, Davis argued that (1) the contract was expressly exempt from the DCPPA, and (2) the CAB lacked jurisdiction or authority to grant declaratory relief. The trial court granted the motion to dismiss, for the reasons advanced by the District.[3] The court also concluded that Davis had failed to demonstrate that it was relieved of the requirement that it exhaust administrative remedies before seeking judicial review. Davis filed a motion for reconsideration or, alternatively, for clarification in which it requested that the trial court state its reasons for granting the motion and address its claim that D.C.Code § 1–1181.4(b) (1999)[4] exempts the subject contract from CAB's jurisdiction. The trial

pertinent part that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). *See also Industrial Bank of Washington v. Allied Consulting Servs.*, 571 A.2d 1166, 1167–68 (D.C. 1990) (citing Rule 10(c) and holding that the trial court erred in failing to consider a guaranty document attached to the complaint when determining its sufficiency under Super. Ct. Civ. R. 12(b)(6) (failure to state a claim)).

3. The District's motion also requested that the court dismiss Davis' claim for punitive damages, and the trial court dismissed it. Davis does not challenge this ruling on appeal.

4. Recodified as D.C.Code § 2–301.04(b).

court denied the motion, stating that it had provided specific reasons for granting dismissal in its earlier order and that the authorities relied upon by Davis had been repealed or recodified. This appeal followed.

## II. Jurisdictional Challenge

Davis argues that the trial court erred in granting the District's motion to dismiss for lack of subject matter jurisdiction or failure to exhaust administrative remedies for two reasons. First, it contends that its contract is one for the recovery of federal financial assistance funds, a category excluded from CAB's jurisdiction by D.C.Code § 1–1181.4(b). Second, Davis argues that the CAB does not have jurisdiction to consider its request for declaratory judgment. The District responds that Davis' claims come within the scope of the Procurement Practices Act of 1985 and CAB's jurisdiction. It contends that the contract at issue does not fall within the "federal financial assistance" exception and that it must be presented first to the CAB, even if it is only arguably within CAB's jurisdiction. Further, the District contends that Davis' demand for declaratory judgment cannot defeat the CAB's jurisdiction. We outline first some of the applicable legal principles, before turning to the parties' respective argument.

### A. *Applicable Legal Principles*

■■■ " 'Subject matter jurisdiction concerns the court's authority to adjudicate the type of controversy presented by the case under consideration.' ' *In re J. W.*, 837 A.2d 40, 44 (D.C.2003) (quoting *In re R.L.*, 590 A.2d 123, 128 (D.C.1991) (citing 1 RESTATEMENT (SECOND) OF JUDGMENTS § 11 (1982))). Whether the trial court has subject matter jurisdiction is a question of law which this court reviews *de novo*. *Id.* (citing *Martin v. District of Columbia Courts*, 753 A.2d 987, 991 (D.C.2000)); *Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002) (citation omitted).

■■■ It is a rule of long standing that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Fisher v. District of Columbia*, 803 A.2d 962, 964 (D.C.2002) (citation and internal quotation marks omitted). This doctrine of exhaustion of administrative remedies "applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course."[5] *Drayton, supra* note 5, 462 A.2d at 1118 (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). The exhaustion requirement is intended to maintain proper relationships between courts and the agencies that have been given regulatory responsibility in certain specialized areas. *Western Pac.*, 352 U.S. at 63, 77 S.Ct. 161. Application of the doctrine affords the courts the benefit of the agency's expertise and promotes judicial efficiency by development of the factual record before the agency, thereby at times, eliminating the need for judicial review. *Barnett v. District of Columbia Dep't of Employment Servs.*, 491 A.2d 1156, 1160 (D.C.1985) (citations omitted). However, the exhaustion

---

**5.** The exhaustion of remedies doctrine is distinguishable from the doctrine of primary jurisdiction. The primary jurisdiction rule "[comes] into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Drayton v. Poretsky Mgmt., Inc.* 462 A.2d 1115, 1118 (D.C.1983) (quoting *Western Pac., supra,* 352 U.S. at 63–64, 77 S.Ct. 161).

rule is not one of jurisdiction. *See District of Columbia v. Group Ins. Adm.,* 633 A.2d 2, 20 (D.C.1993) (citing *National Treasury Employees Union v. King,* 295 U.S.App. D.C. 153, 156, 961 F.2d 240, 243 (1992)) (distinguishing on the basis of its flexibility the exhaustion of administrative remedies doctrine from jurisdiction and standing). It is subject to exceptions for compelling reasons. *See id.* (citing *Dano Resource Recovery v. District of Columbia,* 566 A.2d 483, 486 (D.C.1989)) (listing as exceptions to the doctrine "inadequate remedy, unavailable remedy, and futility"); *see also Barnett,* 491 A.2d at 1160–62 (adopting the principle that the failure to exhaust administrative remedies may be excused for compelling reasons in unemployment compensation appeals); *Randolph–Sheppard Vendors of America v. Weinberger,* 254 U.S.App. D.C. 45, 59–62, 795 F.2d 90, 106–07 (1986) (listing as exceptions to the doctrine, for example, the futility of resorting to the agency process, inadequacy of the administrative remedy, or a showing that irreparable injury would result in the absence of immediate judicial review).

"The CAB is a creature of, and derives its powers from, the District's procurement statute." *A.L. Eastmond & Sons, Inc. v. District of Columbia Contract Appeals Bd.,* 795 A.2d 52, 55 (D.C.2002) (citing D.C.Code § 2–309.01; *Jones Artis Const. Co. v. District of Columbia Contract Appeals Bd.,* 549 A.2d 315, 320 (D.C. 1988)). By statute, the CAB is "the exclusive hearing tribunal for, and shall have jurisdiction to review and determine *de novo* ... [a]ny appeal by a contractor from a final decision by the contracting officer on a claim by a contractor, when such claim arises under or relates to a contract...." D.C.Code § 1–1189.3(a)(2) (1999).[6] This statute further provides that the CAB's jurisdiction "shall be consistent with the coverage of this chapter as defined in § 1–1181.4." *Id.* Section 1–1181.4 states, in pertinent part, that the procurement chapter shall apply to all District agencies and to "any contract for procurement of goods and services, ... but shall not apply to a contract or agreement receiving or making grants-in-aid or for federal financial assistance." D.C.Code § 1–1181.4(b) (1999).[7]

### B. *The CAB's Jurisdiction and Davis' Claim of Exemption*

Davis argues that its claim does not come within the jurisdiction of the CAB under D.C.Code § 1–1189.3(a)(2), which covers claims by a contractor related to a contract with the District. It contends that, in any event, its contract is specifically exempted from CAB's jurisdiction as one "for federal financial assistance" within the meaning of D.C.Code § 1–1181.4(b) because it involves the recovery of Medicare and Medicaid funds on behalf of the District.[8] The District argues that Davis' claims are within the scope of the DCPPA and the CAB's jurisdiction. Further, the District contends that the contract does not qualify for the claimed exemption because neither Davis nor the District will receive federal financial assistance under the contract. Rather, it contends, the contract simply provides for Davis to render services to the District for compensation, thereby bringing it squarely within the jurisdiction of the CAB. We review the

**6.** Recodified at D.C.Code § 2–309.03 (2001).

**7.** Recodified at D.C.Code § 2–301.04(b) (2001).

**8.** There is no dispute that Medicare and Medicaid are federal programs and that the funds used to operate these programs constitute federal financial assistance. *See, e.g., Vincent v. Prudential Ins. Brokerage,* 333 Ark. 414, 970 S.W.2d 215, 217 (1998).

parties' arguments in light of the specific statutory provisions upon which they rely.

### (1) *CAB's Jurisdiction and the Exhaustion of Administrative Remedies Requirement*

 The jurisdiction of the CAB is set forth in D.C.Code § 1–1189.3 (1999). The statute provides for the CAB's exclusive jurisdiction to review and determine, among other specified matters, "[a]ny appeal by a contractor from a final decision by the contracting officer on a claim by a contractor, when such claim arises under or relates to a contract." D.C.Code § 1–1189.3(a)(2).[9] The ordinary meaning of the word "claim" is "[a] demand for something rightful or due," or "[a] demand for payment in accordance with an insurance policy or other formal legal arrangement." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 350 (3d ed. 1992). "The words of the statute should be construed according to their ordinary sense, and with the meaning commonly attributed to them." *United Parcel Serv. v. District of Columbia Dep't of Employment Servs.,* 834 A.2d 868, 872 (D.C.2003) (quoting *James Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 46 (D.C.1989)) (other citation and internal quotation marks omitted). So construed, there is no doubt that Davis' claim for money due from the District for services it rendered under the contract constitute a claim related to its contract with the District. Moreover, "claim" is defined in the CAB's regulations as "a written demand or written assertion by the District or a contractor seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 27

DCMR § 3899 (1988). Thus, both the statute and the regulation plainly encompass Davis' assertion of a right to payment arising under or related to the contract. *See* D.C.Code § 1–1189.3(a)(2); 27 DCMR § 3899. In count II of its complaint, Davis describes its claim as one for breach of contract based on its performance of services pursuant to its contract with the District and the District's failure to pay in accordance with the contract.

 Nevertheless, Davis argues that D.C.Code § 1–1189.3(a)(2) is inapplicable because it never submitted a claim to the contracting officer for a final decision. Indeed, this statutory provision does confer jurisdiction upon the CAB of "[a]ny appeal by a contractor from a final decision by the contracting officer on a claim by the contractor ...." However, a contractor cannot avoid the jurisdiction of the CAB by simply failing to submit an otherwise cognizable claim to the contracting officer for decision. In other words, the failure to pursue the initial step in the administrative process does not relieve a party of the exhaustion of administrative remedies requirement. This court has recognized that "the doctrine of exhaustion of remedies usually refers ... to the exhaustion of all possible remedies within the agency itself." *See Group Ins. Admin., supra,* 633 A.2d 2, 21 n. 16 (citations and internal quotation marks omitted). Under D.C.Code § 1–1188.5(a) (1999), "[a]ll claims by a contractor against the District government arising under or relating to a contract ... shall be submitted to the contracting officer for a decision." Davis could not avoid the CAB's jurisdiction by simply by-passing the initial step in the process. *See id.* Thus, in determining

---

**9.** Subsections (1) and (3) of D.C.Code § 1–1189.3(a) set forth respectively CAB's jurisdiction over the protests of a solicitation or con-

tract and CAB's jurisdiction over the District's claims against a contractor.

whether Davis was required to pursue his claim before the CAB, our inquiry is whether the claim is of the type cognizable under the applicable section of the statute, and this is so whether the contractor chose to avail itself of the administrative process or not. Davis' claim clearly appears to come within the language of D.C.Code § 1–1189.3(a)(2) setting forth CAB's exclusive jurisdiction over the claim. Therefore, unless Davis can show some other basis for being excepted or excused from the exhaustion requirement, it was obligated to exhaust its administrative remedies before resorting to the court for relief.

■■■ Generally, some compelling reason must be shown to excuse a party from failure to exhaust administrative remedies. *See, e.g., Group Ins. Admin., supra,* 633 A.2d at 20–21 (holding that disappointed bidder claiming irreparable harm in order to avoid the exhaustion requirement must show entitlement to such extraordinary relief); *Dano Resource, supra,* 566 A.2d at 487 (affirming the trial court's ruling that a contractor was subject to the exhaustion of administrative remedies requirement because it had failed to show that the appeals procedure was inadequate or otherwise futile). Davis argues a statutory exemption and essentially the unavailability of an administrative remedy as it relates to its request for declaratory relief. We consider each of these claims in turn.

### (2) *Claim of Exemption Under the Federal Financial Assistance Exception*

■■■ Davis argues that its contract comes within the provision of D.C.Code § 1–1181.4, which expressly exempts from CAB's jurisdiction "a contract or agreement receiving or making grants-in-aid or for federal financial assistance." [10] Specifically, it contends that its contract was one for the receipt of federal financial assistance funds (*i.e.,* Medicaid/Medicare), particularly in that its services under the contract were a condition precedent " 'for the' receiving of federal financial assistance from Medicaid/Medicare."

Under the terms of the contract, Davis agreed to provide certain services in exchange for a contingent fee. Specifically, Davis agreed to complete, on behalf of the PBC, Medicare and Medicaid Cost Reports in order to comply with timely filing requirements. The contract sets forth specific tasks that Davis was to perform in order to complete the required cost reports. Most pertinent here, these included that Davis: (1) "[r]eview all data and provide documentation to file cost reports related to Medicare and Medicaid;" (2) "[d]evelop strategies to maximize reimbursement on Cost Reports;" (3) file the Cost Reports by certain specified dates; and (4) "furnish the PBC with all copies of worksheets and relevant regulations to justify the reimbursable costs." Neither the general statement of the work nor the tasks individually specified in the contract provide for Davis or the District to receive grants-in-aid or federal financial assistance. While the work Davis performed would assist the District in documenting its entitlement to recover reimbursable costs under the federal Medicare and

---

**10.** Davis challenges the wording of the statute as quoted by the District in its brief. It contends that the District omitted two key words central to its argument that appear in D.C.Code § 2–301.04(b) (2001), which is the recodification of D.C.Code § 1–1181.4(b) (1981). Specifically, it contends that the provision reads, in pertinent part, "but shall not apply to a contract or agreement [*for the*] receiving or making of grant-in-aid or for federal financial assistance." At the time that Davis entered the contract involved here, the bracketed language upon which it relies did not appear in the statute. *See* D.C.Code § 1–1181.4(b) (1999). Therefore, Davis' position is not supported by this argument.

Medicaid program, it was not itself a contract "receiving or making grants-in-aid or for federal financial assistance." *See* D.C.Code § 2–301.04(b). Therefore, Davis' contractual claim was not exempt from CAB's jurisdiction under this provision of the statute.[11]

### (3) *Effect of Request for Declaratory Judgment*

 Davis argues that it was not required to submit its claim to the CAB because it seeks a declaratory judgment, and the CAB does not have the statutory authority to grant such relief. Essentially, Davis is contending that its complaint falls within an "unavailability of an administrative remedy exception" to the exhaustion requirement. The unavailability of an administrative remedy is a recognized exception to the exhaustion of remedies requirement. *See Group Ins. Admin., supra,* 633 A.2d at 20 (citing *Dano Resource Recovery, supra,* 566 A.2d at 486) (recognizing as exception to the exhaustion of remedies doctrine "inadequate remedy, *unavailable remedy,* and futility") (emphasis added). "An agency remedy is considered inadequate if the agency lacks the power to grant the relief requested." STEIN, ET AL., 5 ADMINISTRATIVE LAW § 49.02[1], at 49–72 (2004).

 Davis argues that there is no express provision in CAB's enabling statute giving it authority to issue a declaratory order. The District does not seek to show otherwise nor does it proffer any other authority authorizing the CAB to grant

declaratory relief.[12] Rather, the District argues that the CAB's jurisdiction over the contract dispute is not affected by the declaratory relief that Davis seeks. Specifically, it contends that Davis' request concerns the alleged failure of the District officials to credit the appropriate accounts with Medicare and Medicaid reimbursements. It contends that it is not necessary to resolve this issue in order for the CAB to determine whether the District is in breach of the contract for failure to pay Davis its contingent fee. We agree.

In its complaint, Davis seeks a declaratory judgment with respect to the PBC's enabling statute. Specifically, Davis requests a declaratory judgment that Medicaid/Medicare payments are "dedicated revenue" within the meaning of D.C.Code § 32–262.1(4) (1999) and that, as such, the payments were required to be deposited into a special fund to be operated by the PBC under D.C.Code § 32.262.6(c) (1999). Davis' contract, which it incorporated into its complaint by reference, does not condition its entitlement to a contingent fee upon the District's deposit of its Medicaid/Medicare receipts into this dedicated fund. As Davis alleges in its complaint, and as it provided for in its contract, its contingent fee is based upon any revenues realized and collected above a certain base line. If this contingency were established, Davis would be entitled to its fee without regard to the account into which the revenues had been placed. The gravamen of Davis' complaint under the contract is that it performed the services, additional reve-

**11.** Since there was at least an arguable basis for jurisdiction, Davis should have submitted its claim to the CAB prior to filing in the Superior Court. *See Lawlor v. District of Columbia,* 758 A.2d 964, 973–74 n. 11 (D.C. 2000) ("[W]here an issue arguably falls within the specialized competence of an agency, the agency should be given an initial opportunity to determine whether or not it has jurisdic-

tion.") (citation omitted). Since Davis did not make such a submission, the trial court's dismissal cannot be successfully challenged on this basis.

**12.** In light of our disposition of the issue, we need not, and do not decide whether the CAB can provide declaratory relief.

nues have been realized and collected as a result, thereby triggering its right to payment, and the District has failed to pay. There is no requirement that the PBC statute be interpreted in order for the CAB to consider and decide Davis' contract dispute involving issues that clearly come within its statutory jurisdiction.[13]

For the foregoing reasons, the order appealed from hereby is affirmed.

*So ordered.*

---

**13.** After briefing and oral argument, appellant filed a motion to file a supplemental brief in which it invokes, for the first time on appeal, a new argument based upon a different statutory provision. The District opposed the motion. "Issues not raised in the trial court will not be considered on appeal absent a manifest miscarriage of justice." *In re Khamvongsa,* 697 A.2d 19, 23 (D.C.1997) (citation omitted). Appellant has not shown that it meets that standard. Therefore, we deny the motion.