# District of Columbia
# Court of Appeals

**No. 15-CV-949**

SONYA OWENS,

Appellant,

v.                                                    **CMB-5174-15**

DISTRICT OF COLUMBIA WATER
AND SEWER AUTHORITY,

Appellee.

FILED
March 30, 2017
DISTRICT OF COLUMBIA
COURT OF APPEALS

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: EASTERLY and McLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcripts of record, the briefs filed, and was argued by counsel. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the Superior Court's dismissal of the complaint is affirmed, but direct further proceedings before the DC Water & Sewer Authority consistent with this opinion.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: March 30, 2017

Opinion by Associate Judge Catharine Easterly

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

15-CV-949

SONYA OWENS, APPELLANT,

V.

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY, APPELLEE.

FILED 03/30/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAB-5174-15)

(Hon. Thomas J. Motley, Associate Judge)

(Argued November 1, 2016                    Decided March 30, 2017)

Sonya Owens, *pro se*.

*Tamika L. Taylor* for appellee.

Before EASTERLY and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

EASTERLY, *Associate Judge*:  Sonya Owens, proceeding pro se, filed suit in Superior Court against the District of Columbia Water and Sewer Authority ("DC Water")[1] to challenge the termination of her water and sewer service. The Superior

---

[1] DC Water was formerly named DC WASA; it "rebranded" itself in 2011.

Court determined that she had failed to exhaust administrative remedies and dismissed her case. On appeal, Ms. Owens, still pro se, challenges that ruling. DC Water asks us to affirm, both defending the trial court's determination that Ms. Owens was obligated to exhaust administrative remedies and arguing that her path to judicial relief should have been directly to this court pursuant to the District of Columbia Administrative Procedure Act (DCAPA).[2]

We affirm the Superior Court's dismissal ruling but—to the extent it thought that Ms. Owens's failure to exhaust administrative remedies was itself a jurisdictional impediment to her seeking relief in that forum—not its reasoning. Courts generally require exhaustion of administrative remedies. But this requirement is only prudential in nature and thus can be equitably excused. The jurisdictional impediment to the Superior Court's consideration of Ms. Owens's claim is the fact that the administrative process due to her amounts to a contested case under the DCAPA. Because exclusive authority to review contested cases lies with this court,[3] the Superior Court had no jurisdiction to hear Ms. Owens's suit.

---

[2] D.C. Code §§ 2-501 to 2-510 (2016 Supp.).

[3] D.C. Code § 2-510; D.C. Code § 11-722 (2013 Repl.).

Our analysis does not end with our affirmance of the Superior Court's dismissal ruling, however, because DC Water, in violation of its own regulations, failed to give Ms. Owens notice of the administrative process available to her. (DC Water's failure to comply with its notice obligations appears to be systemic, as the deficiencies exist in its standard billing statement.) In so doing, DC Water thwarted both Ms. Owens's ability to seek administrative relief and any possibility of this court's review of Ms. Owens's claims. Accordingly, pursuant to the All Writs Act[4] and in aid of our jurisdiction, we direct DC Water to address Ms. Owens's billing challenge on the merits. If Ms. Owens is not satisfied with the result, she may then file a petition for review of the agency's decision with this court.

## I. Facts and Procedural History

In July 2015, Ms. Owens filed suit in Superior Court against DC Water, alleging that DC Water had overcharged her for water and had illegally terminated water and sewer service to her house without following proper procedures. At the

---

[4] 28 U.S.C. § 1651 (a) (2015).

same time, Ms. Owens sought emergency relief in the form of a temporary restraining order (which was granted[5]) and a preliminary injunction.

At the hearing on her request for a preliminary injunction, DC Water argued that Ms. Owens had failed to exhaust the agency's administrative remedies, and that, had she done so and continued to desire judicial review, she should have "appeal[ed] . . . to the D.C. Court of Appeals." "So technically," DC Water argued, "the Superior Court does not have jurisdiction in this matter pursuant to the [District's] Administrative Procedure[] Act."

The court's first reaction to this argument was to inquire as to DC Water's status as a government agency. Counsel for DC Water explained that it is "semi-autonomous, . . . not like, let's say, D.C. Department of Health and Human Services," but a government agency nonetheless. Counsel for DC Water further asserted that it is "ruled by the Administrative Procedure[] Act."

---

[5] The court determined that DC Water had failed to give Ms. Owens adequate notice that it would turn off her water unless it received payment. DC Water had issued a notice giving Ms. Owens a deadline for payment but cut off service nine days before the deadline. As a sanction, the court ordered DC Water to reconnect Ms. Owens's service and to give her a new opportunity to exhaust her administrative remedies vis-à-vis the outstanding bill amount. As discussed below, *see infra* note 16, we do not take issue with the court's provision of emergency injunctive relief to Ms. Owens regarding the termination of her water service.

Ms. Owens did not appear to understand the significance of these assertions and attempted to direct the court to the merits of her claim. The court explained to Ms. Owens that it had to address the exhaustion issue first, and, in so doing, the court seemed initially to accept DC Water's argument that it was presented with a "jurisdictional question."[6] But at a later point in the hearing, the court indicated that it believed it had general jurisdiction to hear Ms. Owens's case and that the only question was whether it would "choose" to require her to exhaust DC Water's administrative review process.[7] Ultimately, the court determined that dismissal of Ms. Owens's suit was appropriate because she did not exhaust administrative remedies, without specifying whether that failure amounted to a jurisdictional defect.

---

[6] The court explained DC Water's argument to Ms. Owens:

> There are rules and regulations that govern this. One is that . . . you have to go to [the agency] first . . . and then if you are not satisfied with those opinions, . . . the proper way to appeal it is to the Court of Appeals and not through Superior Court. . . . It's a jurisdictional question and we deal with the jurisdictional question upfront.

[7] The court stated: "I have jurisdiction, but she has to exhaust the administrative remedies for that. I have general jurisdiction, but I'm going to choose not to exercise it and have her exhaust her administrative remedies."

In the course of this discussion about exhaustion, Ms. Owens asserted that DC Water had not given her notice of the administrative remedies available to her. But the court questioned whether DC Water had any obligation to do so: "Since it's by law it's something that you are deemed to know, but I don't know whether they have to notify you or not." DC Water did not respond directly to this point. Instead, it asserted that it had given Ms. Owens proper notice:

> Your honor, for every bill that is sent to a DC Water consumer, on the back of the bill, which you do not have, because you only have [the] front side[8]—and I will show it to the plaintiff in this case—there is a procedure. It says if you have a dispute, you may dispute your bill by submitting a written challenge within ten business days . . . of the receipt of the bill or you may pay the bill and submit a written challenge before the receipt of the following month's bill and that is in accordance with the DCMR regulations.

Ms. Owens indicated that she had not seen the back side of the paper bill, which was subsequently admitted into evidence as one of DC Water's exhibits, Ex. 4I, and that she was unaware of the information that it contained.[9]

---

[8] It is unclear to whom counsel for DC Water was speaking when she noted, "you only have the front side," but she appears to have been addressing Ms. Owens, because at this point neither party had proffered any billing statements to the court as exhibits.

[9] The back side of the paper bill in Ex. 4I contains a variety of information about various fees and charges and how to make payment, including a paragraph titled "Billing Questions." That paragraph reads in full:

(continued…)

Later, after the court had issued its ruling dismissing the case, Ms. Owens explained that DC Water offered paper or online billing, that she received her bills online, and that her electronic bills did not contain the information on Exhibit 4I. DC Water did not contest these representations; instead, its counsel offered to "give [Ms. Owens] the actual regulation[10] and the backside of a bill. She can even have [Exhibit 4I], if she would like." The court replied "[h]old on" and informed

(…continued)

> Call Customer Service at (202) 354-3600, or by TTY at (202) 354-3677, or email us at custserv@dcwater.com. We are open Monday through Friday 8:00 AM to 5:00 PM. Please provide your phone number and email address so we may serve you better. If you think your bill is incorrect, please contact our Customer Service Department at (202) 354-3600 or email us at custserv@dcwater.com. You may dispute your bill by submitting a written challenge within ten (10) business days of receipt of the bill, or you may pay the bill and submit a written challenge before receipt of the following month's bill. You must file a separate bill dispute for each bill that you challenge. You are responsible for all other charges not under dispute. Please send your challenge to: District of Columbia Water and Sewer Authority, Customer Service Department, 810 First Street NE, 11th Floor, Washington, DC 20002.

The bill nowhere identifies DC Water as a government agency, and it contains no reference to administrative remedies, the obligation to obtain a final agency decision before seeking judicial relief, or the directive that judicial relief must be sought in this court.

[10] Counsel never identified the regulation to which she was referring.

Ms. Owens that "[w]e're making a copy for you." The record does not reflect what, if anything, Ms. Owens was actually given.

## II. Analysis

The Superior Court's ruling dismissing Ms. Owens's suit against DC Water presents two interrelated questions of law: whether Ms. Owens had an obligation to exhaust administrative remedies before she could challenge her water bill in court, and if so, whether the requisite administrative proceedings before DC Water constitute a contested case under the DCAPA such that only this court can provide Ms. Owens with judicial review of her water bill. We review these questions of law de novo.[11] *See Anderson v. Abidoye*, 824 A.2d 42, 44 (D.C. 2003); *see also, e.g.*, *Davis & Assocs. v. Williams*, 892 A.2d 1144, 1148 (D.C. 2006).

---

[11] Our review is limited to these procedural issues. In particular, we do not address Ms. Owens's arguments as to the merits of her case, which the Superior Court never reached, or as to events occurring after her case was dismissed. *See Hall v. United States*, 559 A.2d 1321, 1322 (D.C. 1989) ("[T]he only issues properly before this court are those the party raises on the basis of the record of trial.").

## A. The Obligation to Exhaust Administrative Remedies

It is a common law rule of long-standing that, in litigation involving a government agency, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938); *see also, e.g.*, *Davis & Assocs.*, 892 A.2d at 1148. "The exhaustion requirement is intended to maintain proper relationships between courts and the agencies that have been given regulatory responsibility in certain specialized areas." *Davis & Assocs.*, 892 A.2d at 1148. "Application of the doctrine affords the courts the benefit of the agency's expertise and promotes judicial efficiency by development of the factual record before the agency, thereby at times, eliminating the need for judicial review." *Id.*; *see also Barnett v. D.C. Dep't of Emp't Servs.*, 491 A.2d 1156, 1160 (D.C. 1985) ("[B]y pursuing all administrative avenues for relief the claimant affords the agency an opportunity to correct its own mistakes, mooting judicial controversies and eliminating the need for judicial intervention.").

However, an "[e]xhaustion requirement[], whether incorporated within an agency statute, or created by judicial rule," is generally only a prudential "rule of

judicial administration."[12]  *Barnett*, 491 A.2d at 1160 (alteration in original).  In other words, it is not jurisdictional in the true sense of the word and is subject to equitable exceptions.  *Id.* at 1160-61 ("This court has affirmed the principle that there are circumstances in which a court of equity is justified in considering the merits of an administrative action, notwithstanding the petitioner's failure to exhaust administrative remedies."); *see also McKart v. United States*, 395 U.S. 185, 193 (1969) (acknowledging that the common law exhaustion rule is "subject to numerous exceptions").  For example, an exhaustion requirement might be

---

[12]  An exhaustion requirement is presumed to be prudential "unless [the legislature] states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision."  *Wash. Gas Light Co. v. Pub. Serv. Comm'n of the District of Columbia*, 982 A.2d 691, 701 (D.C. 2009) (quoting *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004)).  This is a high bar.  For example, in *Washington Gas Light*, we construed the text of  D.C. Code § 34-604 (2013 Repl.)—"[n]o appeal shall lie from any order of the Commission unless an application for reconsideration shall have been first made and determined"—as creating "a jurisdictional requirement to exhaust remedies."  982 A.2d at 699, 705.  But in *Barnett*, 491 A.2d at 1163, we construed the text of D.C. Code § 46-111 (1984 Supp.), now codified at D.C. Code § 51-111 (a) (2014 Repl.)—"[c]laims for benefits *shall* be made in accordance with such regulations as the Director may prescribe" (emphasis added)—as creating only a prudential exhaustion rule.

Here, DC Water has never argued that its enabling statute clearly and unequivocally imposes a jurisdictional exhaustion requirement, and in our review of this provision, we discern no such requirement.  *See* D.C. Code § 34-2305 (2013 Repl.) (permissively stating that "[a]ny owner or occupant of a property that receives water and sewer services *may* contest a water or sanitary sewer service bill . . . in accordance with §§ 2-509 and 2-510, as set forth in rules issued by the Mayor pursuant to § 34-2306") (emphasis added).

equitably excused if a litigant was not adequately informed of the administrative process available to her.[13]  *See infra* Section II.C.  But the Superior Court had no authority to determine whether Ms. Owens could be excused from exhausting administrative remedies in this case, because there was an actual jurisdictional impediment to its consideration of her claims:  the DCAPA.

## B.  The DCAPA and this Court's Exclusive Jurisdiction to Hear Contested Cases

"Generally, those who are aggrieved by an unlawful action of the District government may initiate an appropriate equitable action in the Superior Court to seek redress."  *Coleman v. District of Columbia*, 80 A.3d 1028, 1031 (D.C. 2013) (internal quotation marks omitted).  "By statute, however, some actions taken by the District government or its agencies are reviewable in the first instance by this

---

[13]  *See Davis & Assocs.*, 892 A.2d at 1149 (explaining that exceptions to exhaustion obligations will be made when there are "compelling reasons" to do so); *Dano Res. Recovery Inc. v. District of Columbia*, 566 A.2d 483, 486 (D.C. 1989) (identifying three categories of potential justifications for excusing exhaustion obligations:  "inadequate remedy, unavailable remedy, and futility"); *cf. Calhoun v. Wackenhut*, 904 A.2d 343, 345 (D.C. 2006) (reversing an agency decision that dismissed an untimely administrative appeal because "a prerequisite to the jurisdictional bar [imposed by statutory filing requirements] is notice to the claimant of the decision and of any right to administrative appeal of the decision").

court rather than the Superior Court." *Id.* The DCAPA is one such statute. It provides that:

> Any person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to a judicial review thereof in accordance with this subchapter upon filing in the District of Columbia Court of Appeals a written petition for review.

D.C. Code § 2-510; *see also* D.C. Code § 11-722 (conferring on the Court of Appeals jurisdiction to review the orders and decisions of "any agency of the District of Columbia"); *Ne. Neighbors for Responsible Growth, Inc. v. AppleTree Inst. for Educ. Innovation, Inc.*, 92 A.3d 1114, 1121 (D.C. 2014) ("Where the agency proceeding meets the definition of a 'contested case,' judicial review is exclusively in the District of Columbia Court of Appeals, not the Superior Court of the District of Columbia." (footnote omitted)).

The DCAPA defines a "contested case" as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined after a hearing before the Mayor or before an agency." D.C. Code § 2-502 (8). "This court has distilled that definition into a two-part test:  A contested case is (1) a controversy involving a trial-type hearing that is required by the

agency's enabling statute, its implementing regulations, or constitutional right, and (2) which is an adjudicative, as opposed to a legislative, determination." *Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1099 (D.C. 2015) (internal quotation marks omitted); *see also Powell v. District of Columbia Hous. Auth.*, 818 A.2d 188, 192–93 (D.C. 2003); *Timus v. District of Columbia Dep't of Human Rights*, 633 A.2d 751, 756 (D.C. 1993) (en banc); *Chevy Chase Citizens Ass'n v. District of Columbia Council*, 327 A.2d 310, 314 (D.C. 1974) (en banc).

DC Water's enabling statute entitles "[a]ny owner or occupant of a property that receives water and sewer services" to "contest a water or sanitary sewer service bill rendered for water and sewer services in accordance with §§ 2-509 and 2-510, as set forth in rules issued by the Mayor pursuant to § 34-2306." D.C. Code § 34-2305 (2013 Repl.). The cited statutes, §§ 2-509 and 2-510, are provisions of the DCAPA that set forth the procedural requirements for contested cases and their judicial review. DC Water's enabling statute thus ensures that disputes regarding water and sewer bills are contested cases, with all the procedural protections that such classification entails. DC Water's implementing regulations further provide that, at this hearing, an owner or occupant has the right to be represented by counsel, to present evidence affirmatively and in rebuttal, and to cross-examine witnesses, 21 DCMR § 410.3 (2012); all testimony will be taken under oath,

§ 420.6 (1999); the hearing officer must be an impartial decision-maker, § 414.2 (1999); and the hearing officer must issue a final decision containing a concise statement of facts based on the evidence presented and conclusions of law, § 422.1, .2 (1999).

We conclude that, pursuant to this statutory and regulatory scheme, an owner or occupant who contests a bill for water and sewer services is entitled to a trial-type hearing that adjudicates his or her individual legal rights, and that those proceedings therefore amount to a contested case.[14] *See, e.g.*, *Mathis*, 124 A.3d at 1099–1100; *Powell*, 818 A.2d at 194. This conclusion is consistent with prior decisions of this court directly reviewing petitions concerning billing disputes with DC Water.[15] As the administrative process due to Ms. Owens constitutes a contested case, the Superior Court had no jurisdiction to hear her challenge to her water bills. Instead, Ms. Owens's sole path to judicial relief for that challenge is to

---

[14] Whether the petitioner "was legally entitled" to this process is the dispositive inquiry. *See Powell v. District of Columbia Hous. Auth.*, 818 A.2d 188, 193 n.7 (D.C. 2003). Thus it is immaterial that Ms. Owens did not in fact exhaust her administrative remedies.

[15] *See Gatewood v. District of Columbia Water & Sewer Auth.*, 82 A.3d 41 (D.C. 2013) (assuming without discussion that we had jurisdiction under the DCAPA to conduct direct review of petitions concerning billing disputes with DC Water); *King v. District of Columbia Water & Sewer Auth.*, 803 A.2d 966 (D.C. 2002) (same).

file with this court a petition for review of an adverse order or decision issued by DC Water.[16] *See* D.C. Code § 2-510.

## C. This Court's Exercise of its Authority In Aid of Our Jurisdiction

Ordinarily, having determined that a litigant improperly sought relief in Superior Court when she should have pursued administrative remedies and thereafter sought judicial relief in this court, we would conclude our analysis and deny relief. *Cf. Mathis*, 124 A.3d at 1092 (affirming the Superior Court's dismissal ruling but reviewing the claim on the merits because Mr. Mathis filed a petition for review during the pendency of the appeal). But here, we cannot ignore that Ms. Owens's failure to pursue administrative remedies to gain access to judicial review is attributable at least in part to DC Water's failure to abide by the obligation to provide notice imposed by its own regulations.

At the hearing in this case, Ms. Owens objected that she was unaware of the administrative review procedures available to her at DC Water. DC Water asserted

---

[16] We distinguish the Superior Court's provision of emergency injunctive relief to Ms. Owens regarding the termination of her water service. The Superior Court has jurisdiction—subject to this court's jurisdiction to decide the merits of the underlying claim—to grant such relief where it is unavailable through administrative recourse. *Cf. Ne. Neighbors*, 92 A.3d at 1126–27.

that information on the backside of the paper bill sent to customers gave them adequate notice of these procedures. It repeats that assertion in its brief. Ms. Owens received her bills online, and there is a factual question as to whether she was provided the same information in her online billing statement.[17] But even if we assume that Ms. Owens's online bill mirrored the paper bill that DC Water produced as an exhibit, our assessment of DC Water's compliance with its notice obligations would not change because the information provided on DC Water's paper bill is inadequate and does not provide all the information required under the DCMR. *See Braddock v. Smith*, 711 A.2d 835, 840 (D.C. 1998) ("It is a basic tenet of administrative law that an agency is bound to follow its own rules and regulations.").

21 DCMR § 401.1 (2001) ("Notice of Right to Challenge Bills") mandates that "[e]ach water, sewer, and groundwater sewer service bill *shall contain* a written statement advising the owner or occupant of the following":

---

[17] Though DC Water did not contest Ms. Owens's assertion before the Superior Court that the online billing statement issued to customers does not contain the information on the back of a paper bill, given that the court had already ruled and dismissed Ms. Owens's case, there was arguably no need for DC Water to respond. It is therefore unclear whether we can treat DC Water's silence as a concession.

(a)   The owner or occupant may challenge the bill in accordance with the provisions of § 402;[18]

(b)   Upon receipt of a challenge to a water, sewer and groundwater sewer service bill, [DC Water] will investigate the bill;

(c)   If [DC Water] finds the bill to be erroneous, it shall adjust the bill accordingly and refund any overcharge paid;

(d)   The owner or occupant will not be subject to any penalty, interest charge or termination of service for nonpayment of the disputed bill until the owner or occupant has been advised in writing of the results of the investigation;

(e)   The owner or occupant will be notified in writing of the results of the investigation;

(f)   If the bill has not been paid, the owner or occupant will be notified in writing of the amount found to be due

---

[18]   21 DCMR § 402.1 (2013) provides that "[a]n owner or occupant may challenge the most recent charges assessed by [DC Water] for water, sewer and groundwater sewer service," either by:

(a)   Paying the bill, and notifying [DC Water] in writing that he or she believes the bill to be incorrect and is paying under protest; or

(b)   Not paying the current charges contained in the bill and notifying [DC Water] in writing, within ten (10) working days after receipt of the bill of the reason(s) why the bill is believed to be incorrect.

The remaining subsections reiterate the ten-day deadline and explain the consequences for late-filing, § 402.2, clarify that owners and occupants are still responsible for paying uncontested bills, § 402.3, and impose special requirements for raising challenges to practicability determinations, imminent threat determinations, and impervious surface area charges, § 402.4–.8.

as a result of the investigation, and the date on which the bill shall be paid;

(g)    The owner or occupant may request a hearing in writing, within fifteen (15) days, if he or she is not satisfied with the decision of [DC Water]; and

(h)    The owner or occupant may request a written statement of billing, for the most recent eighteen (18) month billing and payment history of the account.  Upon receipt of a written request, [DC Water] shall prepare this statement of billing within thirty (30) days.

In pertinent part, however, DC Water's billing statement only instructs customers with "billing questions" to "please contact . . . [c]ustomer [s]ervice" via phone or email "[i]f [they] think [their] bill is incorrect"; it then states that if they want to dispute their bill, they can submit "a written challenge" to DC Water's offices "within ten (10) business days of receipt of the bill," or "pay the bill and submit a written challenge before receipt of the following month's bill."  *See supra* note 9. DC Water's billing statement is overwhelmingly noncompliant with § 401.1.

The only notice provision with which DC Water's billing statement even partially complies is § 401.1 (a) (requiring DC Water to notify owners and occupants that they can "challenge the[ir] bill in accordance with the provisions of § 402," which in turn provides that they have a choice to pay a contested bill under protest, § 402.1 (a), or to "not pay[]" and contest the bill within ten days of receipt,

§ 402.1 (b)). DC Water's billing statement tells "customers" that they can "pay the bill and submit a written challenge before receipt of the following month's bill," thus arguably complying with § 402.1 (a); but it does not expressly state that they have the option to "not pay[]" when they submit a written challenge "within ten (10) working days after receipt of the bill." § 402.1 (b).

Thereafter, as DC Water conceded at oral argument, DC Water's billing statement fails to provide any of the information required by § 401.1 (b) through (h).[19] But this is the critical information that informs the owner or occupant what will happen after she challenges her bill: that there will be an investigation, that she will receive the results in writing, that she has no obligation to pay a contested bill until that time, and that if she disagrees with the results, she may then request an administrative hearing. Unless an owner or occupant is given this information, administrative review is inaccessible and indeed invisible.

---

[19] Indeed, with respect to § 401.1 (d) (requiring notice that the owner or occupant will not be subject to penalties for nonpayment, including termination, before being advised of the results of an investigation), DC Water's billing statement might be understood to imply the opposite. It states, without qualification, that "[l]ate fees . . . will be assessed on any bill not paid by the stated due date."

The Superior Court indicated that Ms. Owens could be "deemed to know" about these procedures because they are "in the local rules and regulations." But that would turn DC Water's notice obligations under the DCMR on their head—obligations which were presumably imposed to ensure that D.C. property owners and residents would have a meaningful opportunity to maintain access to the basic amenities of water and sewer service.[20] Moreover, we note that there is nothing in the billing statement that might point an owner or occupant in the direction of the DCMR to discover that DC Water affords administrative review proceedings, nor is there anything in the billing statement to suggest that DC Water is a government agency subject to the DCMR.

By failing to comply with its regulatory obligation to provide the requisite notice of how to contest its bills and seek administrative review, DC Water thwarted Ms. Owens's ability to pursue administrative remedies. And it has now compromised this court's ability to review Ms. Owens's claims; because she was shut out of administrative review proceedings in the first instance, her only avenue

---

[20] *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 n.15 (1978) ("Lay consumers of electric service, the uninterrupted continuity of which is essential to health and safety, should be informed clearly of the availability of an opportunity to present their complaint."); *cf. Barnett*, 491 A.2d at 1162 ("[A] major premise of the exhaustion rule is that the claimant enjoyed a fair opportunity to exhaust h[er] administrative remedies.").

to judicial review is closed off, unless this court takes action to rectify this inequitable situation.[21]

This court is empowered, pursuant to the All Writs Act, to act "in aid of [our] . . . jurisdiction[]" in a manner "agreeable to the usages and principles of law." 28 U.S.C. § 1651*; see also District of Columbia v. Greene*, 806 A.2d 216, 219 (D.C. 2002) (acknowledging "a limited judicial power [under the All Writs Act] to preserve the court's jurisdiction") (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966); *Morrow v. District of Columbia*, 417 F.2d 728, 735 (D.C. Cir. 1969) (explaining that, by its express terms, the All Writs Act, applies to "all courts established by Act of Congress"). As discussed above, this court has exclusive authority under the DCAPA to review agency decisions arising out of contested cases, and but for DC Water's failure to give Ms. Owens proper notice of her administrative remedies, this court would have been able to review any adverse final decision of the agency. D.C. Code § 2-510 (a).[22]

---

[21] Any effort Ms. Owens might now make to seek relief from DC Water would be untimely. *See* 21 DCMR § 402.1–.2.

[22] Or, if the agency had failed to issue a decision, we could have "compel[led] agency action unlawfully withheld or unreasonably delayed." D.C. Code § 2-510 (a)(2).

We decline to stand by and allow DC Water's failure to comply with its regulatory notice obligations defeat our powers of review.[23]  Instead, pursuant to the All Writs Act and in aid of our jurisdiction, we direct DC Water to address on the merits the billing challenge Ms. Owens sought to raise in Superior Court.[24]  *Cf. Capitol Hill Hosp. v. District of Columbia State Health Planning & Dev. Agency*, 600 A.2d 793, 799 (D.C. 1991) (acknowledging that we have authority, pursuant to the All Writs Act, to issue orders preserving the status quo until administrative review has been completed because we have reviewing authority over all contested cases);[25] *cf. Braddock*, 711 A.2d at 840–41 (requiring a new hearing where

---

[23]  And we note that at, oral argument, DC Water agreed that, if this court determined that the notice to Ms. Owens was inadequate, this court would have the authority to require DC Water to address Ms. Owens's claims.

[24]  To the extent that those claims affect subsequent bills, Ms. Owens should be able to pursue comprehensive billing relief.

[25]  Our conclusion that we are empowered to act under the All Writs Act is not undermined by *In re Tennant*, 359 F.3d 523, 529 (D.C. Cir. 2004), in which the D.C. Circuit held that, because the petitioner "never initiated a proceeding with the [agency], [it did] not have authority under the All Writs Act to issue a writ of mandamus 'in aid of' prospective jurisdiction to review action the [agency] might take."  Unlike *In re Tennant*, where there was no identifiable dispute between Mr. Tennant and the agency in question (the petitioner had no business or customer relationship with the agency and had never made a specific request of the agency that had been denied), there is a direct relationship and an identifiable dispute between DC Water and Ms. Owens regarding her obligation to pay her water bills:  DC Water claims that Ms. Owens failed to pay her bills and has cut off Ms. Owens's service; Ms. Owens disputes her obligation to pay DC Water the amount alleged.

(continued…)

claimant was not provided written notice, as required by regulation, of her rights and the procedures for a hearing). If Ms. Owens desires judicial review after DC Water addresses her claims, she may then file a petition for review with this court, pursuant to D.C. Code § 2-510.

## III. Conclusion

For the reasons set forth above, we affirm the Superior Court's dismissal of Ms. Owens's complaint but direct further proceedings before DC Water consistent with this opinion.

*So ordered.*

---

(…continued)

Moreover, in this case, Ms. Owens was precluded by DC Water from taking "the first preliminary step that might lead to appellate jurisdiction in this court," *id.*, because that agency failed to give her the requisite notice of her administrative remedies. As explained above, "[o]ur prospective jurisdiction to review the [water bills] was plainly defeated by the agency's action" in failing to provide proper notice or otherwise hear Ms. Owens's claim on the merits. *See id.* at 530 n.5. Put another way, this is not an instance where we would be creating a cause of action. *Id.* at 530 ("It is the essential criterion of appellate jurisdiction that it revises and corrects the proceedings in a cause already instituted and does not create that cause." (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175 (1803))). Indeed, Ms. Owens did initiate "a proceeding of *some* kind," 359 F.3d at 529 (emphasis in original), in that she filed suit in Superior Court; she just chose the wrong forum to pursue her challenge to her water bill because she had not been provided with notice that the correct forum was the agency.